UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                           )
                                 )    Chapter 13
SCOTT A. TIMMER,                 )
JEAN A. TIMMER,                  )    Bankruptcy No. 09-02969
                                 )
     Debtors.                    )

**ORDER RE: MOTION FOR RELIEF FROM
THE AUTOMATIC STAY (Doc. 23)**

This matter came before the undersigned on February 2, 2010 on the Motion for Relief from the Automatic Stay as to 1628 Valley High Drive, Cedar Falls, Iowa 50613. Debtors Scott and Jean Timmer appeared with Attorney Don Gottschalk. Creditor Veridian Credit Union was represented by Attorney Kenneth Nelson. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

**STATEMENT OF THE CASE**

Veridian Credit Union wishes to foreclose on a security interest in Debtors' homestead real estate to satisfy business debt. Debtors assert they have paid off the relevant loan for which their home was security and Veridian has improperly refused to release the lien. In addition, Debtors argue Veridian is adequately protected by a lien on business real estate worth more than the total business debt.

**FINDINGS OF FACT**

Veridian has a first mortgage on Debtors' home, which was built in 2004. The details of that mortgage, which is not in default, are not part of the record and apparently not in dispute. Debtors list their homestead real estate on Schedule A with a current value of $525,000 and secured debt of $396,000.

Veridian also claims it has a second lien on the home based on 1) Loan 164, 2) Debtors' personal guaranty of business debts, and 3) a mortgage which includes cross-collateralization language. U.S. Bank has a subsequent lien on the home which was intended to be in second position pursuant to a refinancing of Loan 164 which occurred with a settlement date of July 23, 2004. The Settlement Statement (Ex. A), on the third page at the first

paragraph 2, requires the Closing Agent to obtain releases to insure U.S. Bank's lien is a second lien.  The following page states the second mortgage payoff would be $185,000.00 payable to John Deere Community Credit Union, now known as Veridian Credit Union.  Debtor Scott Timmer testified that he understood that after the U.S. Bank loan was finalized, Veridian's mortgage on their residence would be gone.

Loan 164 is documented by Veridian's Exhibit 12 ("Promissory Note"), Exhibit 2 ("Modification"), Exhibit 7 ("Guaranty"), and Exhibit 8 ("Mortgage").  The Promissory Note, dated 11/25/03, states the purpose of the loan is "personal equity portion of Timmer Wash Systems."  The Loan amount is $181,000.  It states it is secured by Mortgage dated 11/25/03.  The Modification Agreement dated 8/25/05 "extend[s] draw period by 3 months to November 25, 2005."  It states the amount outstanding is $1,859.62.

The Guaranty is dated August 11, 2003 and states, below paragraph 5, it is secured by a mortgage dated the same date, i.e. 08-11-2003.  The Mortgage is dated 11-25-2003 and was recorded January 29, 2004.  In paragraph 4.B., it states it secures all future advances or obligations under any promissory note or guaranty and, in paragraph 4.C., all obligations Debtors owe to Veridian which now exist or may later arise.  This is the language on which Veridian bases its claim that Debtors' homestead cross-collateralizes the Timmer Wash Systems business debt.

On page 3 of the Promissory Note for Loan 164, in the paragraph titled "OTHER SECURITY," the following language appears:  "Any present or future agreement securing any other debt I owe you will secure the payment of this Loan Agreement.  Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission."  The Mortgage states on page 6 of 9 pages, at paragraph 27:  "WAIVERS.  Except to the extent prohibited by law, Mortgagor waives any rights relating to reinstatement, the marshalling of liens and assets, all rights of dower and distributive share and all homestead exemption rights relating to the Property."  The parties have not pointed out any other language relating to a waiver of homestead rights in the other relevant documents, and the Court is aware of none.

Exhibits 3 through 7 are Promissory Notes by Timmer Wash Systems, Inc., Loans 165 through 168.  The total balance on these four notes is $715,299.25 as of the date of the hearing,

February 2, 2010.  (Ex. 1)  These loans are in default.  Timmer Wash Systems' car wash business is no longer operating.

The Notes state they are secured by "Commercial Security Agreement & Mortgage" (or similar language) "dated 08-11-2003." The business real estate securing these loans has an assessed value of $1,083,290 (Ex. F), and an appraised value of $995,000. (Ex. E)  It is currently listed with a realtor for sale for $869,000.  Debtor Scott Timmer testified the list price is below market value in order to get a quick sale and satisfy Veridian. Also, the business property is now being marketed nationwide, rather than just locally.

Debtors believed they paid off Loan 164 in August 2004 when they closed on the loan with U.S. Bank.  Veridian's account statement for Timmer Wash Systems ending 09-30-04 (Ex. C), shows a total payment on Loan 164 of $185,000 on August 2, 2004.  This paid principal of $181,000, the limit on the Promissory Note, and interest of $6,343.91.  A small balance remained on the loan, however, until Debtors paid $1,877.44 on March 3, 2009.  (Ex. D) Prior to that time, "interest only" payments were automatically withdrawn from Timmer Wash Systems' Veridian account.  Chad Lyons, a commercial loan officer for Veridian, testified that if the loan had been wholly paid off in August 2004, Veridian likely would have released the lien, assuming the business debt was not in default.  It was not totally paid off, however, until March 2009, after the business stopped paying its debts.  Debtors filed their Chapter 13 petition on October 9, 2009, at which time Loan 164 had no balance due.

Even though Loan 164 is paid off, Veridian has refused Debtors' requests to release the lien on their home.  It asserts Debtors' personal Guaranty of Timmer Wash Systems debts and the Mortgage dated 11-25-2003 entitle it to retain the lien. Veridian believes this Mortgage cross-collateralizes the business debt up to the amount of the original loan, or $181,000.  It requests relief from the stay to proceed with foreclosure against both the business real estate and Debtors' personal residence. Counsel for Veridian noted at the hearing that, because this is a Chapter 13 case, there is also an issue about the co-debtor stay as it applies to Timmer Wash Systems, Inc.

## CONCLUSIONS OF LAW

The Court may grant a creditor relief from the automatic stay 1) "for cause, including the lack of adequate protection" of the creditor's interest in property, or 2) if the debtor has no equity in the property and it is not necessary for a successful

3

reorganization. 11 U.S.C. § 362(d)(1, 2). Cause under § 362(d)(1) has been defined as "any reason whereby a creditor is receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding." In re Martens, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005). The moving party has the burden to show that "cause" exists to lift the stay, after which the burden shifts to the debtor to demonstrate why the stay should remain in place. 11 U.S.C. §§ 362(d)(1), 362(g). In re Morales, 403 B.R. 629, 631 (Bankr. N.D. Iowa 2009); In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002); In re Busch, 294 B.R. 137, 140-41 (B.A.P. 10th Cir. 2003).

Under § 362(d)(2), the moving party has the burden to prove the debtors have no equity in the property. In re Carroll's Wine Co., 332 B.R. 874, 875 (Bankr. N.D. Iowa 2005). The burden shifts to debtors to show the property is essential for an effective reorganization. Id.; United States Savs. Ass'n v. Timbers of Innwood Forest Assoc., Ltd., 484 U.S. 365, 375 (1988). A home can be property which is necessary to an effective reorganization in a Chapter 13 case because it provides necessary stability for the debtor's family. In re Adams, 215 B.R. 194, 196 (Bankr. W.D. Mo. 1997); In re Drahos, No. 93-60924, slip op. at 2 (Bankr. N.D. Iowa Oct. 5, 1993).

### HOMESTEAD EXEMPTION AND WAIVER

The evidence herein raises issues regarding Debtors' homestead rights. Iowa's homestead statute allows that a homestead may be sold to satisfy debts "created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt." Iowa Code § 561.21(2). Thus, the homestead may be sold only after exhausting all other property pledged for payment of the debt. In re Wade, 354 B.R. 876, 882 (Bankr. N.D. Iowa 2006). "A mortgagor is required to satisfy mortgage debt from nonhomestead real estate before resorting to the homestead." Id., citing Gaumer v. Hartford-Carlisle Savs. Bank, 451 N.W.2d 497, 501 (Iowa 1990).

The sufficiency of the homestead waiver language in Veridian's exhibits is also relevant to a determination of whether cause exists to lift the automatic stay. This Court in In re Hebert, 301 B.R. 19, 23 (Bankr. N.D. Iowa 2003), considered whether a personal guarantee was sufficient to constitute a homestead waiver under sec. 561.21(2). Applying Iowa case law, the Court held:

4

> [F]or a contract to come within sec. 561.21(2), the
> document must contain at a minimum a statement in the
> form of a stipulation that the homestead will be liable
> for the debt. The contract must also refer to specific
> homestead property. Although the cases are not
> explicit on the point, the best practice would be to do
> so by legal description.

Id. In Hebert, the language in the guarantee stating "guarantors hereby waive the benefit of all Homestead exemption laws" was unenforceable because it did not "expressly stipulate" that the debtor's homestead real estate would be liable for the debt. Id. at 23-24.

## ANALYSIS

Based on the record present, the Court assumes Veridian seeks relief from the automatic stay "for cause" under § 362(d)(1). It has not asserted or attempted to prove that debtor has no equity in the property under § 362(d)(2). In order to succeed under § 362(d)(1), Veridian must prove that cause exists to allow it to foreclose on Debtors' homestead, which can include the lack of adequate protection.

The debt Veridian is attempting to satisfy from Debtors' homestead property is the business debt of Timmer Wash Systems which Debtors personally guaranteed. Under Iowa law, Veridian must first proceed against any non-homestead property which is liable for the debt. The record indicates that the value of the business real estate, listed for sale at $869,000, is likely higher than the total business debt of $715,299.25. This real estate is also liable for the business debt.

In addition, the homestead waiver in the contracts giving Veridian a right to proceed against the homestead must specifically stipulate that Debtors' specific homestead real estate is liable for the debt. The Court notes that the Guaranty does not include such language. Instead, it refers to the mortgage on business real estate dated 08-11-2003. In addition, a clause in the Promissory Note specifically excepts property which is Debtors' "principal dwelling" from property securing the note. Arguably, Veridian's claim that Debtors' homestead real estate cross-collateralizes Timmer Wash Systems' business debt must fail.

From the record, it is clear that Debtors, who are owners of Timmer Wash Sytems, Inc., prefer that Veridian satisfy the business debt from business real estate. It appears appropriate

5

to grant relief Veridian from the co-debtor stay of § 1301(c) to enforce its rights against real estate owned by Timmer Wash Systems, Inc.  Veridian has failed, however, to prove cause exists to allow it to proceed against Debtors' homestead real estate.

**WHEREFORE**, the Motion for Relief from the Automatic Stay as to 1628 Valley High Drive, Cedar Falls, Iowa 50613 (Doc. 23) is DENIED.

**FURTHER**, the automatic stay remains in place preventing Veridian Credit Union from attempting to foreclose against Debtors' personal residence at 1628 Valley High Drive, Cedar Falls, Iowa.

**FURTHER**, the co-debtor stay under § 1301(c) is hereby lifted to allow Veridian to enforce its rights against real estate owned by Timmer Wash Systems, Inc. which is collateral for the business debt.  Veridian may include Debtors, individually, as parties to this foreclosure action based on their Guaranty of Timmer Wash Systems debt.  Veridian may not include Debtors' homestead real estate in this foreclosure action.

**FURTHER**, if any deficiency exists after completion of the foreclosure action against Timmer Wash Systems' real estate, Veridian may refile its Motion for Relief from the automatic stay in this Court.

DATED AND ENTERED: February 17, 2010

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE